May it please the Court, Rachel Kornblatt on behalf of the Appellant, Kyle Syphax. Under the uncontested facts here, the Sentencing Commission, the Fifth Circuit, the Sixth and Ninth Circuits, and the government in the Seventh Circuit would all agree the district court committed significant procedural error here. The lower court did so by miscalculating Mr. Syphax's criminal history category, and in turn, his guidelines range, when it failed to properly apply Note 11 to Section 4A1.2. Note 11's terms are plain. When a revocation applies to multiple prior sentences, and those sentences are counted separately, sentencing courts add the term of imprisonment upon revocation to the sentence that will result in the greatest increase in criminal history points. Courts should not add this time to every prior sentence the court revoked. The note provides there's a revocation when the revocation is based on the same violation conduct. This application note clearly applies here. Mr. Syphax was on probation for three cases, all separate prior sentences under that guidelines definition. If he had discharged probation, each case would have been one point each, but he was revoked in one hearing based on the same violation conduct. These facts are all uncontested. His sentences are then executed. His orders serve custody on each case concurrent to each other. The court should have added the revocation time to one case, but not all three. So one case becomes a three-pointer, but under Note 11, the remaining two cases should have remained as one point each. The Sentencing Commission explained... Let me ask, do you concede that the Jefferson County judge imposed three separate sentences? I do, Your Honor. But I'll explain why I don't believe... So therefore, if we were to agree with the Tenth Circuit, you would lose, right? Correct, Your Honor. I will explain why the Tenth Circuit, I believe, is erroneous. And partly because the Sentencing Commission explained Note 11 applies within this exact context by providing an example within the note that fits exactly Mr. Syphax's uncontested facts. The government tries to convince this court to ignore that example, which is a large component to the note itself. It takes up nearly half the application of this text. For instance, the government argues the court should basically disregard the note by coming up with a novel way to interpret it if there's ambiguity in the note, sidestepping the rule of lenity, which favors us. It comes up... It makes this argument that the court should assign different tiers of weight, with the guideline having the highest weight, the application note having the next highest, and the example within the note having the least amount of weight. The government doesn't cite any case law to support that because there is none. In fact, the clear case law in this circuit is the exact opposite. Unless the application note is plainly erroneous or violates the Constitution or a federal statute, none of which the government alleges, then the application note has controlling weight. And that for this well-settled law, what we cited the 2008 Abdullah opinion, which included Judge Benton, and the 2024 opinion, which included Judge Grunder and Doneth, Your Honor. The Sentencing Commission's primer, which we provided in our briefing, again explained what it meant by Note 11 when it provided another example, how it applies when it fits Mr. Syphax's uncontested facts. In response, the government ignored that primer. It also ignored a previous concession the government made in our favor in the Seventh Circuit. The government comes close to ignoring the majority of the circuits to decide this issue, the Sixth and Street, the Ninth and Flores, by shooing away their holdings, which agree that Note 11 applies as we argue. Let me ask you this. The example in application Note 11, as I read it, it seems to assume a single sentence. How am I misreading that? Because the example in Note 11 speaks about a total sentence. So when you speak of a total, that assumes that there's two separate sentences, Your Honor. Maybe. And the example in the primer also has two sentences listed in that chart, if you look at it. Now, the Fifth Circuit, an unpublished decision in Moore, likewise came out agreeing with our position, finding the example clarifies that Note 11 applies when a court revokes multiple prior sentences based on the same violation of conduct. Moore was filed after opening brief, but we raised it in our reply. The government would probably argue the same as the Fifth, as it did with the Sixth and Ninth, that the court should reject these holdings because the courts did not engage in a plain language analysis. That's exactly what they did. Flores cites the note, determined the effect the note had on the calculation. Street, same thing. The opinion there expressly states this holding is based on a plain reading of the note. They followed the text, including that example, and they found, as the court should hear, the example within the note virtually dictates the result. And in those cases, your honors, there were multiple terms of imprisonment imposed on the different counts, too. The one loan to center, as you mentioned, is the Tenth Circuit and Norris. And Norris essentially held the application notes only triggered if the state court issued one term of one sentence of incarceration when it revokes multiple sentences. The Tenth Circuit bases this reasoning on the application notes use of the term of imprisonment. It also reasoned that whether a judge intended multiple revocations or one revocation was important, but the only time the Tenth Circuit found an intent to have one revocation was when the court there sentenced that person to one term of imprisonment. So the case really does involve around that concept. As an aside, Norris, when it focused on the judge's intent for multiple versus single revocations, it relies on its Teasdale opinion, also a Tenth Circuit case on plain air. Teasdale, when it speaks about that concept about multiple versus separate, it cites case laws such as Jones from the Eighth Circuit and other Tenth Circuit case law involving related versus unrelated cases, which was the government's argue in the underlying case. And that clearly, that was never our argument that these cases should be considered related. The government here has abandoned that argument on appeal. The instructions used for the term, use of the term of imprisonment, though, your honor, is not limiting the reach of the note. The instructions simply telling courts the mechanics of how to apply it, how to allocate points. And we know this clause is not limiting the reach because the note tells us so. Again, the example that immediately follows that term is premised on multiple sentences imposed. Again, that's by the use of the word total. We also know that the application note is not limited to Norris' scenario because it conflicts with the Sensing Commission's primer, which uses, again, an example where the court ordered two terms of imprisonment upon revocation of two cases. And your honor, the government takes a third approach, too. They tell you to apply Norris, but they go a little bit further than that by saying the note should only apply when there's one prior sentence involving multiple counts. And again, I think that is more of an extreme position on Norris. And note 11 may well apply to Norris. It may well apply to the government's position, but that's not the only time it applies because this court implicitly rejected those narrow constructs in Clayton, an unreported case. In Clayton, the defendant was serving multiple prior probationary sentences with a court revoked in order to custodiate all of them. Under Norris' test, this would have failed because the revocation resulted in multiple terms of incarceration. Under the government's third interpretation, it would have failed because there were multiple prior sentences rather than one sentence with multiple counts. Neither issue was important for the Clayton panel. What was important? The same violation conduct that's contained within the note. Same as the Fifth Circuit. This circuit upheld the sentencing court's refusal to apply note 11, but it did so because of plain error, which does not apply here, and because the record there failed to show the defendant's revocation was based on the same violation conduct. Your Honor, we showed uncontested that Mr. Syphax's revocations were based on the same violation conduct. I'm seeing I'm close to my time. I'm going to reserve the remainder to discuss harmless error. Very well. May it please the court. Jason Dunkel for the government. Of the interpretations offered of note 11, it is only the government's interpretation and the district court's interpretation that gives effect to the commission's use of the term, a revocation, a singular phrase. And we ask this court to join the Norris court in finding that that term matters and give effect to that singular term, a revocation, and affirm the district court's finding that Mr. Syphax's three separate revocations do not trigger the applicability of note 11. I think it's important to start off with understanding the context in which note 11 applies. You only look at note 11, you only care about note 11 for those defendants who are serving multiple sentences that have a term of supervision, whether it's probation or supervised release, and those terms are revoked. If this is a defendant who has just a single term, a single sentence, you don't look at note 11, it doesn't apply. And so in that context where the whole world of defendants that are affected by this note are those who are serving simultaneously multiple sentences of probation, it is very curious for the commission to use the phrase a revocation unless that term has meaning. It wasn't a haphazard drafting, it wasn't a mistaken draft. They intentionally used the phrase a revocation. The Norris case would directly- What about their primer? Would you address the primer of the Sentencing Commission? Yes, Your Honor. We believe that the primer has no weight because the Sentencing Commission does not act through the primer. When the Sentencing Commission wants to act in their regulatory authority, they issue the sentencing guidelines that go to Congress for Congress to review and either veto or allow to take effect. They can also write commentary, which again, just like the guidelines, passes through a majority vote of the Sentencing Commission, but those don't go to the Congress for their review. The Sentencing Commission as a whole does not vote with a quorum to enact a primer. They don't authorize the primer. The primer is created by staff that work for the Sentencing Commission. It is not an authoritative voice of the members of the Sentencing Commission to enact a primer. Has the court said what you just said about the primer? I have not been able to find a court that- Is there any authority besides you speaking it? No, but I believe that's the common sense implication. A regulatory body speaks through its official acts and a primer is not an official act of the Sentencing Commission. As the Sentencing Commission says, as you know, it has legislative, judicial, and all kinds of power recognized by the Supreme Court. Have they said what is an official act for them or not? That I'm not sure. Proceed. The Norris case is directly on- I hate to do this, but I've worked on a tribal issues advisory group to the Sentencing Commission for 15 years. And all I can tell you is that I don't think it's a correct statement that the commentary and application notes are not included with what is sent to the Congress, right? The Congress can read those and based on the notes, they can reject the proposed amendment. It's not like they're hidden. And when you said that they're never submitted to Congress, I don't think that's true. Sorry, they're not- they don't need to be submitted to the Congress. The Sentencing Commission's- They're not required by statute, but by custom and practice, they have always been submitted. The rules of the Sentencing Commission are that the guidelines themselves must be sent to Congress and are sent by May 1st of each year for an act and on November 1st. But those same rules of the Sentencing Commission are that the commentary can be amended at any point. And they don't need to go through that whole process. Their practice is yes, for them to go. And when this amendment was adopted in 1991, the commentary did go with the- they also amended certain provisions of 4A1.2. And all that was packaged and did go together. But the Sentencing Commission's position is that the commentary can change at any time without going through the congressional process.  All right. So, Mr. Duncan, when I asked Ms. Kornblatt about the example in Note 11 and my initial reading of it as suggesting that it involved one sentence, I think her response was something along the lines of, well, it says the defendant was sentenced to a total of 45 days imprisonment. Does that word total imply that multiple sentences were involved? I don't think so, because the example also uses the phrase, the revocation term of imprisonment, 45 days. So there again, we're going to the singular. I think that the confusion comes from the guidelines use of the word sentences is always a count-specific term. So if you have a case with three separate counts of conviction, there are three separate sentences. And there's provisions for whether you treat those as a single sentence. But sentence is always conviction-specific, whereas the revocation term is a singular that is applying to- that can combine multiple sentences together. And so for in this case, for them to recognize that there are three separate terms of revocation does pull us outside of the scope of the example in Note 11. So would total come to play in a situation where the revocation involved two separate counts and that was one sentence, is that? That would be one. I mean, for example, if you have two consecutive terms, we would discuss that a sentence of three years, a consecutive sentence of five years, we could discuss that as the term of imprisonment of eight years, adding those together. In that case, the court would have issued a term of imprisonment of eight years, and it was divvied up between multiple consecutive sentences. And that's where you would total the five and the three? Yes, Your Honor. Okay. If I could speak a little bit more about this example, I think it's important to note that this example is not set out to be an exhaustive example, and it's not worded in a way that makes the reference to the same violation conduct so important that it gets grafted into the original rule of Note 11, where there's no reference to violation conduct. So for example, if the example in the note had set it out as it does, but then continued on to say, but in a similar circumstances where there were revocations for separate violation conduct, the rule would not apply, then we would agree that those words have important meaning. But as frequently in the case in the examples listed in the sentencing guidelines that additional facts are included within those examples that do not have any consequence. For example, in the grouping rules of Chapter 3D, there's a rule that if you have robbery convictions, the separate robberies do not group together. And then in that example, it talks about a person who has multiple bank robberies. The use of the fact of bank robbery in that example doesn't mean that that rule only applies for people with bank robberies and not carjacking robberies or Hobbs Act robberies. It is often the case that when the Sentencing Commission is providing examples, those examples add additional facts than are necessary. And just the fact that that fact of same revocation conduct is listed in the example does not graft it into the actual Note 11 where there is no reference to whether or not it is the same violation conduct or separate violation conduct. I'd additionally like to address the attacks on whether or not we're abiding by the government's position in Shelton. The government operates in all 12 circuit courts of appeals. We oftentimes have to take different positions based off of different circuit law. I think it's noteworthy to note that the brief that is cited from the Shelton case was filed in June of 2018, the very month that this court spoke in Clayton. And so I don't know whether the authors of the Shelton brief knew that the Clayton case had recently come out. But when I am drafting a brief for this court, I am going to follow the Eighth Circuit law such as that in Clayton and not the lead of the Northern District Court. Clayton is unpublished though, right? Clayton is unpublished, but it does provide some guidance to us as to how the Eighth Circuit is going to approach these issues. Has Clayton been cited, sorry to ask this, I need to ask my clerks, but has Clayton been cited by this court since it was? That I don't recall. I do believe that Clayton was cited in the Norris case. I'm sorry, I got the time wrong. Not in the Norris case, but I think one of the Fifth Circuit cases that was. Yes, you're right about that, yes.  Okay, and then. But I was driving it cited by this court. Yeah, it's cited by this court, I don't know. Okay, and I don't think so now that you mentioned it. Go ahead. Okay. And then I would like to just very briefly, I see that I have less than a minute left, address the Street and the Flores case. I think that this court should view those cases both as less persuasive than the Norris case because those courts did not address this argument that is being raised. The Street Court noted that the government did not even address Note 11. So there's no, the Street Court did not weigh on this particular argument that has been raised by us and by the Norris Court. And in the Flores case, the government relied on arguments that Note 11 should not be applied retroactively. So in neither one of those cases did the court struggle with the terminology and the linguistics that the Norris case did. And for those reasons, when this court is looking at the Norris case and the Street case and the Flores case, it should believe that the Norris case is the most persuasive of the three. With that, I ask for you to affirm the sentence. Thank you very much. First, with respect to the primer, if you're grappling with what did the Sentencing Commission mean by the use of the word total, by the use of the phrase term of incarceration, the Sentencing Commission's telling you what it meant in that primer when it's instructing its probation officers how to apply it. So I believe it is significant weight here. Clayton, I would just like to stress again, Clayton's a 2018 case, unreported. Norris is 2003. It never wants to, Clayton, reference Norris or find anything relevant in Norris. What it found relevant was the same violation conduct when you had multiple prior sentences and multiple terms of incarceration there. And finally, harmless error. Briefly, I have less than a minute. There's no harmless error here. The sentencing court sentenced Mr. Syphax off the wrong guideline range under Molina, Martinez, Pugh, that anchor sentencing courts. And when they vary from that range, they're still varying from the wrong range, so the sentence is inherent within the ultimate sentence. While the district court here did vary, it did not give any indication within the record that it would have imposed the same sentence regardless. So the government's use of nary, I think, is not on point because in there, the circuit found important. The judge there said, I would have sentenced the same sentence regardless of the objections. And there's no such statement or anything else in that record to show that there's harmless error. We ask for honors to reverse Mr. Syphax's. Thank you. Thank you, counsel, for your argument and briefing and appearance. Case is submitted and we'll issue an opinion in due course. You may be excused.